**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANSON PAAPE,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Case No. 14 C 250** |
| | ) | |
| **TYRONE BAKER, Warden,**[1] | ) | |
| | ) | |
| Respondent. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Anson Paape was convicted of first-degree murder following a bench trial in state court in DuPage County. He was sentenced to 75 years in prison and is currently serving that sentence at Hill Correctional Center. Paape has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254 in which he asserts four grounds for relief: (1) the introduction of false testimony during his grand jury proceeding, (2) nondisclosure of a search warrant application that included witness statements favorable to the defense, (3) ineffective assistance of trial and appeals counsel, and (4) prosecutorial misconduct.

Paape's petition has been pending before this Court for ten years. For nearly all of that time, proceedings were stayed while Paape was exhausting state court remedies on successive claims for relief. Following completion of that process, he filed an amended petition. The matter is fully briefed and is now before the Court for determination. For the following reasons, the Court denies Paape's petition.

---

[1] Tyrone Baker is currently the warden of the correctional facility in which Paape is incarcerated. The Court has therefore substituted Baker as the appropriate respondent according to Fed. R. Civ. P. 25(d).

**Background**

The Court takes the relevant facts from the decisions of the state appellate court, which are presumed correct under 28 U.S.C. § 2254(e)(1).  In July 2004, Paape was playing a card game at his home with Mick Murray, Mike Libet, Ron Chowjko, and John Dominick.  Paape's wife and children were also home at the time.  Based on the results of the card game, one of the participants would have to play a modified version of Russian roulette.   The modification was that someone else would hold the gun to the participant's head, rather than doing so himself.  When the card game concluded, Murray was to play their version of Russian roulette.  There is a dispute over who loaded the gun, but Paape put the revolver to Murray's head and pulled the trigger.  Murray subsequently died of his injuries, and Paape was charged with first-degree murder.

In Illinois, a person who performs an act that causes a person's death with intent to kill or do great bodily harm, knowledge that the act will cause death, or knowledge that the act creates a strong probability of death or great bodily harm is guilty of first-degree murder.  720 ILCS 5/9-1(a)(1)-(2).  At Paape's bench trial, there was no dispute that he pointed the gun and Murray and pulled the trigger.  The primary issue was whether Paape had the intent or knowledge required for a first-degree murder conviction, as he contended that he did not know the gun was loaded.

The trial court found Paape guilty of two counts of first-degree murder, two counts of obstruction of justice, and one count of violation of bail bond.  The court sentenced him to 75 years in prison for the murder conviction, with concurrent sentences for the other offenses.

**A.    Direct Appeal**

On direct appeal, Paape challenged the sufficiency of the evidence; whether the State proved the required mental state for first-degree murder beyond a reasonable doubt; the trial court's decision to admit evidence of weapons and accessories unrelated to Murray's death; and its refusal to strike testimony regarding Paape's proficiency with guns.  Paape also contended that the court's 75 year sentence was an abuse of discretion.  The Illinois Appellate Court affirmed Paape's conviction and sentence in an unpublished order in *People v. Paape*, No. 2-07-0658 (Ill. App. Ct. Oct. 28, 2009), and the Illinois Supreme Court denied Paape leave to appeal, *People v. Paape*, 924 N.E.2d 459 (Table) (2010).

**B.    Collateral Review**

**1.    Postconviction petition**

Paape filed his first post-conviction petition in state court under the Post-Conviction Hearing Act, 725 ILCS 5/122-1, in October 2010.  He raised eight claims of error.  The trial court dismissed the petition without an evidentiary hearing.[2]  On appeal to the Illinois Appellate Court, Paape asserted that the trial court erred in dismissing three of his claims: (1) he was denied effective assistance of counsel because his attorney did not impeach Dominick's testimony that Paape retrieved the gun from upstairs, when Dominick previously told Detective Pokryfke that Paape retrieved the gun from a crawl space; (2) he was denied effective assistance of counsel because his

_____

[2] Under the Post-Conviction Hearing Act, "a defendant is only entitled to an evidentiary hearing where the allegations contained in the petition, supported by the trial record and any accompanying affidavits, make a substantial showing of a constitutional violation." *People v. Lucas*, 203 Ill. 2d 410, 418, 787 N.E.2d 113, 118 (2002)

attorney threatened to end the representation if he exercised his right to testify or his right to a jury trial; and (3) the prosecution intimidated a witness, Libet, into not speaking with anyone about the case, in violation of Paape's due process rights.

The appellate court affirmed the trial court's dismissal of the post-conviction petition. *People v. Paape*, 2013 IL App (2d) 120378-U.  The court held that Paape's ineffective assistance claim regarding trial counsel's failure to impeach Dominick did not satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 688 (1984).  *Id.* ¶ 21. The court noted that although the impeachment would have supported Paape's theory that he did not know the gun was loaded, it would have had minimal impact on Dominick's testimony that he did not see anyone other than Paape handle the gun, or Chowjko and Libet's testimony that they observed Paape load the gun and spin the cylinder before shooting Murray.  *Id.* ¶ 22.  As a result, the court concluded that impeachment based on Dominick's inconsistent statement regarding where he saw Paape retrieve the gun would not have created a reasonable probability that the outcome of the trial would have been different.  *Id.*

The appellate court affirmed the dismissal of the other ineffective assistance claim because Paape did not have a cognizable excuse for his failure to submit an affidavit or other documentation to corroborate his claim, as section 122-1(b) of the Post-Conviction Hearing Act requires.  *Id.* ¶¶ 25-29.  Finally, though the court was troubled that law enforcement advised Libet not to speak to anyone about the incident, it held that any error in doing so was harmless.  *Id.* ¶ 34.  It concluded as such because Libet testified for the State and was subject to cross-examination and because Paape failed to allege how his attempts to interview Libet were thwarted, or how his defense

4

was prejudiced. *Id.*

Paape raised the same arguments on a petition for leave to appeal (PLA) filed before the Illinois Supreme Court, State Ct. R., Ex. 11, which that court denied. *People v. Paape*, 996 N.E.2d 20 (Table) (Ill. 2013).

### 2.    Petition for leave to file successive post-conviction petition

On March 25, 2015, Paape filed a petition for leave to file a successive post-conviction petition. Paape argued that his trial counsel was ineffective for failing to present evidence that the prosecution intimidated witnesses and offered sentence leniency for false testimony, submitting a memorandum which argued that Paape had not engaged in a game of Russian roulette, and failing to obtain a psychiatric evaluation of Paape prior to trial. Paape also argued that newly discovered evidence—an affidavit from Raymond Doliber saying that he overheard Libet claim *he* had loaded the revolver used to kill Murray—supported a claim of actual innocence. The trial court denied leave to file the petition.

Paape appealed the trial court's ruling with respect to his actual innocence claim based on the Doliber affidavit and his ineffectiveness arguments based on trial counsel's assertions that Paape was not playing Russian roulette and failure to obtain a psychiatric evaluation. The Appellate Court affirmed the denial on August 18, 2017. *People v. Paape*, 2017 IL App. (2d) 150759-U. The court held that even if Doliber's affidavit was newly discovered, it could not sustain a claim of actual innocence under Illinois law because it was cumulative of other witness testimony at trial. *Id.* ¶ 6. The court also concluded that even if it "excuse[d] Paape's procedural default" on the ineffective assistance claims, the underlying claims themselves did not satisfy the

requirements of *Strickland*. *Id.* ¶¶ 7-8. Specifically, Paape "presented no evidence showing that his mental health was either a serious or relevant issue at his trial" and thus did not establish that his counsel was unreasonable in not obtaining a psychiatric evaluation. *Id.* ¶ 8. Regarding the Russian roulette argument, the court noted that counsel claimed that Paape was not playing Russian roulette to reinforce the trial strategy that he did not believe the gun was loaded and to distinguish a hypothetical in which the State argued that anyone playing Russian roulette would be guilty of first-degree murder for the death of any of the game's participants. *Id.* ¶ 9. The court concluded "that counsel's strategy was ultimately unsuccessful does not mean that counsel was constitutionally ineffective." *Id.* (citing *Strickland*, 466 U.S. at 689-91).

In sum, the state court determined that "Paape's successive postconviction petition presented no issue of arguable merit, and therefore the [trial] court properly denied Paape leave to file." *Id.* ¶ 10.

Paape asserted the ineffectiveness claim regarding Russian roulette and his actual innocence claim in a PLA filed before the Illinois Supreme Court. State Ct. R., Ex. 17. The Illinois Supreme Court summarily denied the PLA on March 21, 2018. *People v. Paape*, 95 N.E.3d 484 (Table) (Ill. 2018).

### 3.    Second petition for leave to file a successive post-conviction petition

On April 16, 2018, Paape filed a second petition for leave to file a successive post-conviction petition. He alleged a new actual innocence argument and a due process violation based on assertions that the State and Detective Pokryfke knowingly presented false grand jury testimony to obtain his indictment. The trial court denied Paape leave to file on February 18, 2020. It concluded that, in addition to being

6

cumulative and failing to provide total vindication as an actual innocence claim requires in Illinois, the grand jury testimony was not newly discovered, and his claims could have been raised in previous post-conviction proceedings. The court also noted that any discrepancies were minor and did not rise to the level of deliberate or intentional misleading of the jury and that Detective Pokryfke's testimony suggested that Paape "willfully and voluntarily committed the act, the natural tendency of which was to destroy another's life," not that Paape had the specific intent to kill. *People v. Paape*, No. 04-CF-1959, *5 (DuPage Cnty. Cir. Ct. Feb. 18, 2020).

Reviewing the same arguments, the appellate court affirmed the denial of leave to file a successive petition on May 24, 2022. *People v. Paape*, No. 2-20-0293 (Ill. App. Ct. May 24, 2022). It "agree[d] with the trial court's assessment of [Paape]'s motion in all respects." *Id.* ¶ 8. The court concluded that Paape's evidence was not new and that his claims could have been raised in his original post-conviction proceeding, particularly as the State tendered the grand jury transcript during pre-trial discovery in August 2004. *See id.* ¶¶ 6-9. The court noted, in addition, that "[t]he State's only duty was to present the grand jury with information that tends to establish probable cause; it need not have presented the grand jury with exculpatory evidence or evidence to reduce the degree of the defendant's culpability." *Id.* ¶ 8 (citing *United States v. Williams*, 504 U.S. 36, 52 (1992)) (citation omitted),

Paape raised these arguments again in a petition for leave to appeal to the Illinois Supreme Court. The Illinois Supreme Court summarily denied Paape's PLA on September 28, 2022. *People v. Paape*, 197 N.E.3d 1116 (Table) (Ill. 2022).

On December 1, 2022, Paape petitioned for certiorari to the United States

Supreme Court for review of his claim regarding the presentation of false testimony to the grand jury. The Court summarily denied his petition on February 21, 2023. *Paape v. Illinois*, 143 S. Ct. 815 (2023) (Mem.).

### 4. Federal habeas proceedings

On January 13, 2014, Paape timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. In February 2014, the Court granted Paape's motion to stay the case pending the disposition of his ongoing post-conviction proceedings in state court. The Court lifted the stay in November 2022 and granted Paape's motion to amend his habeas corpus petition in April 2023. Paape asserts four grounds for relief before this Court:

1. The prosecution intentionally presented false testimony to the grand jury to obtain his indictment;

2. The prosecution failed to disclose a favorable search warrant application;

3. Ineffective assistance of trial and direct appeal counsel; and

4. Prosecutorial misconduct.

### Discussion

Before proceeding the substance of Paape's petition, the Court attends to the procedural requirements and standard of review that shape its analysis. There are two "paradigmatic" ways a habeas corpus petitioner can procedurally default a federal claim. *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)). The first is if the petitioner "fails to 'fairly present' [the claim] 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Id.* This

8

means the petitioner must raise each issue at every level of the state court system—trial, appeal, and in a petition for leave to appeal to the Illinois Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

The second paradigmatic form of procedural default is where "the state court rejects a federal claim based on a state procedural rule 'that is both independent of the federal question and adequate to support the judgment.'" *Clemons*, 845 F.3d at 819 (quoting *Richardson*, 745 F.3d at 268). This includes where a state court rejects a federal claim "because [it was] not raised in accord with the state's procedural rules." *Richardson*, 745 F.3d at 268-69 (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)).

In Illinois, a petitioner may file only one post-conviction petition without leave of the court. 725 ILCS 5/122-1(f). Leave of court to file a successive petition "may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* If the state court denies leave to file a subsequent petition because the petitioner "did not show cause for his failure to raise the claim in his first state post-conviction petition" in accordance with 725 ILCS 5/122-1(f), noncompliance with "[t]he state procedural rule is an adequate and independent state ground precluding federal habeas review of the [] claim raised" in the subsequent petition. *Thomas v. Williams*, 822 F.3d 378, 384-85 (7th Cir. 2016).

If a claim has not been procedurally defaulted, a district court may issue a writ of habeas corpus under 28 U.S.C. § 2254 only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Paape's

petition is also governed by the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). As relevant to this case, under AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in custody pursuant to a claim adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that of the Supreme Court on a question of law, or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite conclusion." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court unreasonably applies clearly established federal law if it identifies the proper governing principle but unreasonably applies it to the facts of the case, if it unreasonably extends the principle to a new context where it should not apply, or if it unreasonably declines to extend a principle to a new context where it should apply. *Id.* at 407. This requires more than a showing that the state court's application of federal law was incorrect; the state court's application of federal law must have been "objectively unreasonable." *Id.* at 409.

With these principles in mind, the Court turns to Paape's claims.

**A.     Presentation of false testimony**

Paape argues that Detective Pokryfke deliberately presented two instances of false testimony to the grand jury in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). The first is when Detective Pokryfke testified that Murray said, "I don't want to do this" prior to being shot, and the second is when he testified that "none of the teenagers

10

interviewed indicated that the bullets were switched, or that anyone placed a live round in the gun other than Anson Paape."

Paape contends that prior police reports and witness statements demonstrate the falsity of Detective Pokryfke's statements. Regarding the first statement, Paape points to documents that indicate he stopped Libet from switching Libet's own bullet into the gun, Am. Habeas Pet., Ex. A at 1, that participants in the card game argued about who was supposed to shoot whom, Am. Habeas Pet., Ex. E at 11, and that after the argument concluded Murray moved his head toward the gun, closed his eyes, and "no comments were made" before Paape pulled the trigger. *Id.* Regarding the second statement, Paape points to documents stating that a person named Shara Kominski contacted police to report hearing a rumor that Mike Libet put the bullet in the gun before Murray was shot. *See* Am. Habeas Pet., Ex. C at 6; *id.*, Ex. D at 7.

As an initial matter, Paape's *Napue* claim is procedurally defaulted. Paape did not raise this argument in his initial post-conviction petition. He raised it for the first time in his second petition for leave to file a successive post-conviction petition. Both on its own and through adoption of the trial court's analysis, the Illinois Appellate Court determined that Paape could have raised this claim in his original post-conviction petition and accordingly failed to satisfy the cause-and-prejudice requirements of 725 ILCS 5/122-1(f). The appellate court's denial of the claim on this basis is an independent and adequate state law ground that precludes federal review. *See Thomas*, 822 F.3d at 384-85.

"Procedural default may be excused . . . where the petitioner demonstrates either: (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the

claims will result in a fundamental miscarriage of justice.'" *Id.* at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Paape argues that his procedural default should be excused because he did not have access to his grand jury transcripts until December 2017. He contends that he was not present when the transcripts were tendered to his counsel by the State during pre-trial discovery in 2004 and that he was unable to retrieve the transcripts subsequently because, until its amendment in October 2023, Illinois Supreme Court Rule 415(c) required discovery materials to remain in the attorney's exclusive custody.

Even if Paape's alleged inability to access the grand jury transcript excused his procedural default, his *Napue* claim does not warrant habeas relief. When reviewing a state court decision subject to AEDPA, a federal court can overturn that decision only if it is "contrary to" or an "unreasonable application of[] *clearly established Federal law, as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d) (emphasis added). It is true that in *Napue* the Supreme Court stated that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." 360 U.S. at 269. But *Napue* is understood to address the introduction of false testimony at trial. There is no clearly established Supreme Court precedent that addresses the introduction of perjured testimony during grand jury proceedings. Because the state court determination in this case cannot be "contrary to" or an "unreasonable application" of law that does not exist, the Court may not overturn it. Moreover, because the grand jury is meant to "assess whether there is adequate basis for bringing a criminal charge," *Williams*, 504 U.S. at 52 (1992), courts have consistently held that a subsequent guilty verdict means "that there

was probable cause to believe the defendants were guilty" and that "any error in the grand jury proceeding connected with the charging decision was harmless," *United States v. Mechanik*, 475 U.S. 66, 70 (1986). *See also Griffin v. Truitt*, No. 15 C 2313, 2023 WL 358782, at *18 (N.D. Ill. Jan. 23, 2023); *Quesada v. Atchison,* No. 12 C 8264, 2014 WL 4668644, at *5 (N.D. Ill. Sept. 18, 2014).

For the foregoing reasons, the Court overrules Paape's claim based on the alleged introduction of false testimony during his grand jury proceeding.

**B.    Suppression of search warrant**

Paape's second asserted ground for relief is the nondisclosure of a search warrant application that said Paape retrieved the gun from his basement crawl space. He contends the warrant application would have provided impeachment material to undermine Dominick and Libet's testimony about when the gun was introduced to the game and where Paape retrieved it from, and that it would have supported the defense theory that Libet was left alone with the gun while Paape and others went to get pizza. As argued before this Court, Paape's second ground for relief is based on an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963), even though he does not specifically refer to it as a *Brady* claim.

This claim is procedurally defaulted. Paape did not raise this argument before the Illinois Appellate Court at any point, and thus he failed to "'fairly present' it 'throughout at least one complete round of state-court review.'" *Clemons*, 845 F.3d at 819 (quoting *Richardson*, 745 F.3d at 268). Indeed, Paape conceded before the trial court that the complaint for search warrant was disclosed to his counsel prior to trial and that he did not pursue the point on appeal. State Ct. R., Ex. 25 at 2-3.

Perhaps in an attempt to avoid this default, Paape contends in his reply that the "document raised several related matters aside from any non-disclosure issues." Pet'r's Reply at 8. But even if that is so, Paape has not argued any of these purportedly "related matters" before this Court.[3]

For these reasons, the Court overrules Paape's claim based on nondisclosure of the search warrant application.

## C. Ineffective assistance of counsel

Paape's third asserted ground for relief is ineffective assistance of counsel. A claim of ineffective assistance of counsel requires the petitioner to show that counsel's performance was deficient and that it prejudiced the defense. *Strickland*, 466 U.S. at 687. Paape argues that (1) trial and appellate counsel were ineffective for failing to argue that the State presented perjured testimony to the grand jury, (2) trial counsel was ineffective for arguing that the shooting did not involve a traditional game of Russian roulette, and (3) trial counsel was ineffective because he failed subject the State's case to meaningful adversary testing. None of these claims warrant relief in this case.

For reasons similar to those addressed in the earlier *Napue* analysis in this opinion, Paape's contention regarding his trial and appellate counsel was ineffective

---

[3] Paape appears to be airing grievances related to a previous Illinois Appellate Court opinion that rejected an ineffective assistance of counsel argument that he has not made in this proceeding. *Compare* Am. Habeas Pet. at 26-28 (citing Am. Habeas Pet. Appx., Ex. H) *and* Pet'r's Reply at 8 ("the State reviewing Court found the whole matter 'harmless error' due to the testimony weight of Dominick, Libet and Chwojko. However . . . all three witnesses testimony cannot be deemed reliable . . .") *with Paape*, 2013 IL App (2d) 120378-U ¶¶ 21-22 (concluding that Paape was not prejudiced by counsel's failure to impeach Dominick's testimony that Paape retrieved the gun from upstairs because it would not have affected other relevant testimony from Dominick, Libet, and Chowjko).

because they failed to argue that the State presented perjured testimony to the grand jury lacks merit. If nothing else, Paape cannot meet *Strickland*'s prejudice requirement. Because he was found guilty at trial, "any error in the grand jury proceeding connected with the charging decision was harmless." *Mechanik*, 475 U.S. at 70.

Paape next argues that his trial counsel was ineffective for arguing that Paape was not playing a game of Russian roulette when the shooting occurred. Paape contends that this undermined the argument that he lacked the intent or knowledge required for a first-degree murder conviction and thus prejudiced his defense. Though Paape first raised this argument in his initial petition for leave to file a successive post-conviction petition, the Court is satisfied that this claim was fairly raised in state court proceedings. Still, it does not warrant granting relief on the merits.

As an initial matter, respondent contends that this claim is procedurally defaulted because the state court declined the petition based on an independent state procedural ground—that Paape failed to satisfy the requirements 725 ILCS 5/122-1(f). This is incorrect. The appellate court bypassed the procedural question and Paape's contention that he satisfied 122-1(f)'s "cause" requirement because raising the issue in his first post-conviction petition would have required his counsel to argue that she herself was ineffective during the direct appeal. The court assumed the procedural default was excused without deciding as much and concluded that the "underlying ineffectiveness claim was meritless." *Paape*, 2017 IL App. (2d) 150759-U ¶ 7; *see also id*. ¶ 10 ("We agree with the trial court that Paape's successive postconviction petition presented no issue of arguable merit, and therefore the court properly denied Paape leave to file.").

15

Accordingly, the Court assesses whether the state court's analysis of the claim was "contrary to" or an "unreasonable application" of the Supreme Court's *Strickland* precedent which governs ineffective assistance of counsel claims. Federal courts "engage in 'doubly deferential' review of ineffective assistance claims when [AEDPA] applies, as it does here." *Wilborn v. Jones*, 964 F.3d 618, 620 (7th Cir. 2020) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

The state court's analysis was not "contrary to" governing Supreme Court precedent. The state court noted that an ineffective assistance of counsel claim requires the defendant to "allege facts demonstrating that his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Paape*, 2017 IL App. (2d) 150759-U ¶ 8 (quoting *People v. Patterson*, 192 Ill. 2d 93, 107, 735 N.E.2d 616, 626 (2000) (citing *Strickland*, 466 U.S. at 695)). In doing so, the court properly identified and recited the applicable U.S. Supreme Court precedent that governed the claim.

The state court's application of that precedent was also not unreasonable. The court determined that trial counsel's decision to argue that Paape was not playing Russian roulette was a strategic choice meant to reinforce that Paape did not believe the gun was loaded. It concluded that just because "counsel's strategy was ultimately unsuccessful does not mean that counsel was constitutionally ineffective in hindsight." *Id*. ¶ 9 (citing *Strickland*, 455 U.S. at 689-91). In the abstract, a flat assertion that Paape was not playing Russian roulette could be understood to suggest that the shooting was intentional. But the context in which counsel made the contested

16

assertions makes clear that was not the case. Trial counsel was attempting to construe the prosecution's argument to be that "if you play Russian Roulette, it must be murder" and sought to distinguish Paape's conduct from that hypothetical. State Ct. R., Ex. 30 at R1451. Under these circumstances, the state court's determination that this was a reasonable strategic move by counsel was not objectively unreasonable.

Paape's final ineffective assistance of counsel argument is that his trial counsel was ineffective because he failed to utilize available police documentation, "presented no substantial, or substantiated, defense," "informed the Court that the defense [was] resting without any meaningful supported challenge to the State's case," and did not present "any meaningful adversary testing." Am. Habeas Pet. at 33.

This claim is procedurally defaulted. Paape raised the claim before the appellate court when he appealed the denial of his first petition for leave to file a successive post-conviction petition. He stated that "[t]rial counsel's overall performance regarding this matter was so deficient that; [sic] 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' the adversarial process itself becomes presumptively unreliable." State Ct. R., Ex. 14 at 11 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). Though Paape raised a variety of ineffective assistance counsel claims throughout his state court proceedings, he did not specifically raise a *Cronic* claim or otherwise contend that his trial counsel presented no defense or did not subject the State's case to meaningful adversary testing before the Illinois Supreme Court. As a result, his last ineffective assistance argument was not fairly raised through one complete round of state court proceedings.

The claim would also fail on the merits even if it was not procedurally defaulted.

17

As relevant to this case, a *Cronic* claim requires a showing that counsel "*entirely* fail[ed] to subject the prosecution's case to meaningful adversarial testing," and this requirement is not satisfied by arguments that counsel "failed to do so at specific points." *Bell v. Cone*, 535 U.S. 685, 697 (2002). Paape's trial counsel presented opening and closing argument, cross examined prosecution witnesses, and attempted to advance a theory of the case under which Paape did not have the intent or knowledge required for a conviction of first-degree murder. Though Paape may have been dissatisfied with how trial counsel presented his defense and the guilty verdict rendered by the trial court, it cannot be said that his trial counsel "entirely failed" to challenge the State's case.

For the foregoing reasons, the Court overrules Paape's claim of ineffective assistance of counsel.

## D. Prosecutorial misconduct

Paape's final asserted ground for relief is that the prosecution deprived him of his right to a fair trial and due process by advising Mike Libet not to talk to anyone about the case, intimidating other potential witnesses, and offering leniency in exchange for "discriminatory" testimony against Paape. Am. Habeas Pet. at 34-35. The Court addresses each of these points in turn.

In his initial post-conviction petition, Paape fairly raised the argument that the prosecution violated his fair trial and due process rights by advising Mike Libet not to talk to anyone. Respondent does not suggest that this claim is defaulted. The Illinois Appellate Court issued the last reasoned decision on this claim and concluded that though it was "troubled by law enforcement advising Libet not to discuss the incident . . .

18

any error was harmless." *Paape*, 2013 IL App (2d) 120378-U ¶ 34. The question for the Court is thus whether the state court's decision was "contrary to" or an "unreasonable application" of governing Supreme Court law. It was not.

The appellate court reasoned that "[t]hreats or intimidation made by the government to dissuade a potential defense witness from testifying is a violation of a defendant's right to due process of law and his sixth amendment right to compulsory process." *Id.* ¶ 33 (citing *United States v. Linder*, No. 12 CR 22, 2013 WL 812382, at *43 (N.D. Ill. Mar. 5, 2013)). But "even if substantial interference with a witness occurs, the misconduct will not result in a new trial if the error was harmless." *Id.* (citing *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997)).

Some circuit and district courts have held that "substantial government interference with a defense witness's free and unhampered choice to testify violates the defendant's due process rights." *Newell v. Hanks*, 283 F.3d 827, 837 (7th Cir. 2002) (citing *United States v. Vavages*, 151 F.3d 1185, 1191 (9th Cir. 1998); *Freeman v. Georgia*, 599 F.2d 65, 69 (5th Cir. 1979); *Lockett v. Blackburn*, 571 F.2d 309, 314 (5th Cir. 1978); *United States v. Morrison*, 535 F.2d 223, 225–28 (3d Cir. 1976)). And to be sure, as a general matter, a defendant's "right to offer the testimony of witnesses, and to compel their attendance, if necessary . . . is a fundamental element of due process of law." *Webb v. Texas*, 409 U.S. 95, 98 (1972) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

But this is another instance in which there is no clearly established Supreme Court precedent that sets the parameters of this right as related to this case. Specifically, there is no Supreme Court precedent that establishes the circumstances

under which, the prosecution's advice that a potential witness not discuss an incident with anyone deprives a defendant of due process. As a result, though the Illinois Appellate Court relied on federal district and circuit court cases in its analysis, its decision was not "contrary to" or an "unreasonable" application of clearly established Supreme Court precedent, because there is none. This ends the inquiry, as there is no basis to overturn the state court's decision on this claim.

Paape makes two more contentions related to the conduct of prosecutors, both of which are procedurally defaulted. First, he alleges that a prosecutor came to his home and told his wife that she would lose custody of her children if she or the children testified on Paape's behalf. Second, he claims that a prosecutor offered Brian Tano a lenient sentence in exchange for testimony against Paape at trial. Paape did not raise either claim through a full round of state court review, and he has not attempted to provide a reason for his default.

For the foregoing reasons, the Court overrules Paape's claims of prosecutorial misconduct.

## Conclusion

Tyrone Baker is substituted as the respondent in this case pursuant to Federal Rule of Civil Procedure 25(d). For the reasons stated above, the Court denies Paape's petition for a writ of heabeas corpus and directs the Clerk to enter judgment stating: The petition for a writ of habeas corpus is denied. The Court also declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2). The correctness of the Court's procedural default rulings against Paape is not fairly debatable, *see Slack v. McDaniel*, 529 U.S. 473, 478 (2000), and on the claims the Court denied on the merits, there is

nothing to suggest that the merits are debatable, capable of different resolution, or

deserving of further consideration. *See Barefoot v. Estelle*, 463 U.S. 880, 893 n.4

(1983); *Porter v. Gramley*, 121 F.3d 1308, 1312 (7th Cir. 1997).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 9, 2024